```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


                              )
UNITED STATES                 )
                              )    CRIMINAL NO. 11-CR-10210-PBS
     v.                       )
                              )
ABAYOMI MITCHELL,             )
                              )
          Defendant.          )
                              )
```

**MEMORANDUM AND ORDER**

January 10, 2012

Saris, U.S.D.J.

## I. Introduction

Defendant Abayomi Mitchell moves to suppress evidence seized and statements made to members of the Boston Police Department on April 20, 2011. The evidence was seized following a stop of Defendant after he was observed participating in a transaction which police believed to be the purchase of crack cocaine with a second individual identified as Charles Johnson, from a drug dealer named Owens Brown. Both Brown and Johnson were intercepted over a court-authorized wire tap setting up the transaction. Defendant's statements were made in response to post-Miranda questioning that followed the seizure of approximately 62 grams of crack and over $2,000.00. Defendant contends that the stop and subsequent search of his person was

1

unlawful, and therefore the statements that followed were "fruits of the poisonous tree" and should be suppressed. After an evidentiary hearing at which Boston Police Detective Gregory Brown, Detective Martin O'Malley, and Patrolman Jesse Goff testified, the motion is **DENIED**.

## II. Facts

Since 2007, Detective Gregory Brown had been working with the Boston Police Department Special Investigations Unit on "Operation Braveheart," an investigation into the drug dealing activities of Owens Brown and other members of the Academy Home Braves gang. Detective Brown was aware of Owens Brown's drug distribution business after investigating him for the past four years.

On April 20, 2011, Detective Brown was monitoring Owens Brown's phone calls and text messages, pursuant to a court-authorized wiretap, and relayed that information to various surveillance officers around Boston, including Detective Martin O'Malley. Detective Brown intercepted a series of conversations between Owens Brown and Tamara Ayala, one of his several girlfriends. Owens Brown first asked Ayala to bring "sneakers to Flu's house," and later said he would meet her at 137 Tonawanda Street in Dorchester. From his experience surveilling Owens Brown and other drug dealers, Detective Brown believed "sneakers" was a code word for drugs, and Flu's house was the home of Shawn

2

Stevens, nicknamed Swine Flu.

Detective Brown also intercepted a series of conversations between Owens Brown and Charles Johnson.  Based on these conversations and his experience, Detective Brown believed Owens Brown and Johnson were arranging a drug transaction that was going to occur at 137 Tonawanda Street later that day.  In particular, the two men agreed to meet earlier in the day in the Ruggles Street area of Roxbury.  When Owens Brown was on his way to meet Johnson, Johnson called him at 12:17 p.m. and said, "What you want for it anyway?"  Owens Brown quickly tried to drown out Johnson's voice, saying "Ah ah, I'll see you when I get right there."  At 12:32 p.m., presumably after the two had met, Johnson sent Owens Brown a text message that read, "k."  From investigating Owens Brown previously, Detective Brown believed that Owens Brown was attempting drown out Johnson's voice because Johnson was asking him the price for drugs, and that "k" was short for "okay," meaning Johnson had agreed to Owens Brown's conditions for the drug deal.

At 12:53 p.m., Owens Brown called Johnson and said he would have to "come and grab it this way, man."  Johnson replied, "We're gonna have to get on the bus . . ."  After hearing this conversation, Detective Brown believed that Johnson would be coming to purchase the drugs with another individual.  At 1:38 p.m., Owens Brown called Johnson again and provided him walking directions to 137 Tonawanda Street.  Detective Brown relayed this

information to surveillance officers, including Detective O'Malley.

Detective O'Malley was sitting in a car conducting surveillance on 137 Tonawanda Street from up the street. According to Detective O'Malley, 137 Tonawanda Street was a known residence where Owen Brown would sell drugs. Detective O'Malley observed two men enter 137 Tonawanda Street, one wearing a white Boston Red Sox baseball cap, presumed to be Johnson, and the other wearing a train conductor's hat, later identified as Defendant Abayomi Mitchell. Johnson and Mitchell left about two minutes later, and Detective O'Malley observed them entering the basement rear door of 166 Rosseter Street. Shortly after they entered, two police officers tried to see if the basement rear door was open. However, the door was locked, and the two officers left immediately. About a minute later, Detective O'Malley observed Mitchell poke his head out of the door and look around for a few seconds. From his experience, Detective O'Malley believed Mitchell was conducting a counter-surveillance technique to see if he and Johnson had been followed by the police.

About five minutes later, Mitchell left 166 Rosseter Street, and was walking toward the number 23 bus stop when Detective O'Malley observed him pat the left-hand breast pocket of his jacket. From his previous experience investigating drug and gun crimes, Detective O'Malley believed that Mitchell was conducting

4

a "security check" to ensure the drugs were still in his pocket.

After Mitchell boarded the 23 bus, Detective O'Malley called Patrolman Jesse Goff and asked him to follow the bus and arrest Mitchell because he believed Defendant had illegal drugs in his possession. Officer Goff followed the bus until Mitchell exited at 1911 Dorchester Avenue. Officer Goff confronted Mitchell, asked him to raise his arms, and patted him down to find the drugs. Officer Goff did not fear that he was armed. Officer Goff found marijuana in Mitchell's pants pocket, crack in the left breast pocket of his jacket, and about $2,000.00. Mitchell was arrested, transported to a police station, and made statements to the police, which he is seeking to suppress.

### III. Discussion

Probable cause to conduct a search exists if "the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). "An officer may conduct a warrantless arrest as long as there is probable cause to believe that the suspect has committed or is committing a crime." United States v. Link, 238 F.3d 106, 109 (1st Cir. 2001)(internal citations and quotations omitted). "Probable cause exists if, at the time of the arrest, the collective knowledge of the officers involved was sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Id. To evaluate

whether the search and arrest of Mitchell are supported by probable cause, the Court looks to the "totality of the circumstances."  Id.

The circumstances in this case indicate that the police had probable cause to search and arrest Mitchell.  Owens Brown was a known drug dealer whom the Boston Police Department had been investigating for four years.  On April 20, 2011, through wiretaps and physical surveillance, the officers had sufficient information to believe Owens Brown was conducting a drug deal with Charles Johnson and Defendant at 137 Tonawanda Street, a known drug house.  Soon after, Detective O'Malley saw Mitchell conduct a "security check" of the left-hand breast pocket of his jacket, which provided him probable cause that Defendant had drugs in that pocket.  Cf. United States v. Humphries, 372 F.3d 653, 655 (4th Cir. 2004)(finding probable cause for search in part because experienced officer saw suspect pat his waist and interpreted that as a "security check" for weapons); United States v. Fernandes, 708 F. Supp. 2d 130, 136 (D. Mass. 2010)("A gesture (like a touching of the body) that might appear perfectly innocent to a casual onlooker . . ., depending on the setting and circumstances, may nonetheless appear suspect to an experienced officer.").

## IV. Order

Because the officers had probable cause to search and arrest Mitchell, the Court **DENIES** defendant's motion to suppress.

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge